Mandi J. Karvis/Bar No. 021858
Isaiah X. Herrera/Bar No. 034215
**WICKER SMITH O'HARA McCOY & FORD, P.A.**
One N. Central Ave., Suite 885
Phoenix, AZ   85004

Firm E-mail: PHXcrtpleadings@wickersmith.com

Mandi J. Karvis
  Direct Phone: (602) 648-2240
  Fax: (602) 812-4986
  E-mail: MKarvis@wickersmith.com

Isaiah X. Herrera
  Direct Phone: (602) 648-2243
  Fax: (602) 812-4986
  Email: IHerrera@wickersmith.com

Attorneys for Cynthia Renee Fallhowe, M.D.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| De'Vonne Gonzales, on behalf of Aaron Salter's surviving beneficiaries, and as Personal Representative of the Estate of Aaron Salter, deceased,<br><br>Plaintiff,<br><br>v.<br><br>Corizon Health, Inc., Corizon, LLC, Murray Young, James Baird, Renee Fallhowe, Leo Easley, Ryan Diaz, ASPC-Tucson Site Medical Director, and all Unknown Agents/Employees of Corizon Health, Inc. and/or Corizon, LLC responsible to treat, monitor, and/or refer Aaron Salter for treatment whose authority and/or identity becomes known, | Case No.: 2:19-cv-02190-PHX-JJT-CDB<br><br>**DEFENDANT CYNTHIA RENEE FALLHOWE'S MOTION FOR SUMMARY JUDGMENT**<br><br>*(Assigned to Honorable John J. Tuchi)*<br><br>Oral Argument Requested |

Defendants.

Pursuant to Federal Rules of Civil Procedure 56, Defendant Cynthia Renee FallHowe, M.D., by and through undersigned counsel, moves for summary judgment as Plaintiff cannot establish causation against Dr. FallHowe, which is a key element to her claims. The record and testimony by Plaintiff's causation expert in this matter show that Plaintiff has utterly failed to establish a causal connection between the death of the decedent and Dr. FallHowe's role in the case. Additionally, Plaintiff has failed to establish a deliberate indifference claim as to Dr. FallHowe and that claim must be dismissed as well.

## Memorandum of Points and Authorities

### I.   Factual Background

Aaron Salter began serving a term of imprisonment in the Arizona Department of Corrections (hereafter, "ADOC"), on or about October 3, 2013. SOF 1. At the time of the events in question, Corizon Health, Inc. (hereafter, "Corizon"), was contracted by the State of Arizona to provide medical care to prisoners in the State run prisons within the ADOC and as an inmate with the ADOC, Mr. Salter received healthcare services from Corizon. SOF 2. During the time of all the events in question, Dr. FallHowe was the Chief Medical Officer for Corizon. SOF 3. In that role, Dr. FallHowe was not involved in the direct care of patients at ADOC. SOF 4. The only way Dr. FallHowe ever got involved with the care of a patient such as Mr. Salter would be if an "alternative treatment plan" was proposed and subsequently appealed, then Dr. FallHowe would be given the opportunity to review the case. SOF 5.

Mr. Salter began complaining of pain in his pelvis and a swollen right testicle around September 2016. SOF 6. The first time that Dr. FallHowe was made aware of Mr. Salter's issues with care was near the end of May 2017. SOF 7. Since becoming aware of Mr. Salter's issues, Dr. FallHowe made sure to respond promptly to communications regarding the care of Mr. Salter. SOF 8. Dr. FallHowe testified that she attempted to use the system to get Mr. Salter the care he needed. SOF 9. For instance, on July 11, 2017, after a working diagnosis of a hydrocele had not

lead to relief for Mr. Salter, the case was discussed with Dr. FallHowe, who instructed the providers at ASPC-T Santa Rita to appeal the case, so that she could review the alternative treatment plan (hereafter, "ATP") and original treatment plan proposed by the provider and approve one of them. SOF 10.

Mr. Salter underwent a testicular ultrasound on August 7, 2017. The conclusion of the ultrasound was that a heterogeneous mass-like process appeared to occupy the entirety of the scrotum containing multiple hypoechoic and anechoic changes. SOF 11. Between August 7, 2017 and August 15, 2020, it was discovered Mr. Salter had a tumor and multiple pulmonary and brain metastases. SOF 12. A biopsy of the pelvic mass showed testicular cancer on August 15, 2017. SOF 13. Specifically, Mr. Salter had a germ cell tumor, which is one of the fastest growing types of cancer and can rapidly progress from localized to metastatic. SOF 14. Dr. Friedlander acknowledged that it is possible that Mr. Salter had metastatic disease at the time of his first presentation to medical. SOF 15. Mr. Salter passed away on August 22, 2017 as a result of complications of the chemotherapy treatment that he received as opposed to the testicular cancer itself. SOF 16-18.

Plaintiff, the decedent's mother, as the personal representative of the Estate of Mr. Salter sued Corizon and numerous medical providers, including Dr. FallHowe, alleging deliberate indifference under 42 U.S.C. § 1983, wrongful death, and state law medical negligence. SOF 19. As to Dr. FallHowe specifically, Plaintiff alleges that she was "aware of the outside medical providers recommendation to Aaron to see a Urologist, failed to approve, authorize follow-up, appeal, or otherwise permit Aaron to receive this medically necessary treatment." SOF 20. Plaintiff also alleges that Dr. FallHowe "was advised that Aaron needed to see an outside medical specialist for a Urology consult and proper workup to rule out other conditions and again refused to permit Aaron adequate, reasonable or timely medical care." SOF 21.

Plaintiff has disclosed Donald Kern, M.D., as their standard of care expert against Dr. FallHowe to opine "at any time Dr. FallHowe was asked for an opinion she should also have been aware of the results and acted to make the urology referral herself or communicate directly with the site provider to have that person make the referral." SOF 22. But since then, Dr. Kern has testified that until a patient is brought to Dr. FallHowe's attention, Dr. FallHowe could not become

involved in the process and act in terms of approving or denying requests for specialty care. SOF 23. Dr. Kern also acknowledged that Dr. FallHowe requested another urologist be found because she was not satisfied about the timing of Mr. Salter's then scheduled urology appointment. SOF 24. Dr. Kern similarly confirmed during his deposition that there is no evidence that Dr. FallHowe received an appeal request relating to Mr. Salter being seen by an urologist that she denied. SOF 25. Finally, Dr. Kern testified that Dr. FallHowe responded promptly to e-mails regarding the care of Mr. Salter. SOF 26. Plaintiff has not disclosed any other expert witnesses to support any claim against Dr. FallHowe. SOF 27.

## II.     Legal Argument

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. See *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(c)(4) and 56(e); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995); see *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968). But conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; 11 *11 *Devereaux,* 263 F.3d at 1076.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th

Cir. 1995). If the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

    *a.     Plaintiff cannot establish causation, a required element of her claims.*

Plaintiff has alleged a claim for state law medical negligence. Federal law dictates that district courts must exercise jurisdiction that conforms to federal law "so far as such laws are suitable to carry the same into effect." 42 U.S.C. § 1988. However, where federal law is considered deficient because it does not address suitable remedies, state law applies to the extent that it is not inconsistent with the Constitution or federal law. *Id.* There is no federal medical negligence; therefore, the state rules must apply. A.R.S. § 12-563 provides that:

> Both of the following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:
> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.
> 2. **Such failure** was a proximate cause of the injury. (Emphasis added)

A plaintiff in a medical negligence case has the burden of proving all elements of their claim, including negligence, causation, and damages. In order to recover in a negligence case, the plaintiff must establish that the alleged negligence was a proximate cause of the claimed injury. "A plaintiff proves proximate cause, also referred to as legal cause, by demonstrating a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by an efficient intervening cause that produces an injury, in whole or in part, and without which the injury would not have occurred." *Barrett v. Harris*, 207 Ariz. 374, 378, 86 P.3d 954, 958 (App.2004). A plaintiff has the burden of proving his or her injuries were caused by the defendant's conduct. *See Seisinger v. Siebel*, 220 Ariz. 85, 93, 203 P.3d 483, 491 (2009). A plaintiff in a medical malpractice lawsuit must prove the causal connection between an act or omission and the ultimate injury through expert medical testimony, unless the connection is readily apparent to the trier of fact. *Barrett v. Harris*, 207 Ariz. At 378, 86 P.3d at 958. Negligence is not actionable in the abstract. *Id.*

As has been long held and firmly established in Arizona, expert medical testimony is required to establish proximate cause and make out a prima facie case of medical malpractice. *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54, 699 P.2d 925, 928 (App. 1985). Accordingly, any alleged act of medical negligence must be specifically and probably connected to the claimed injury. The causal nexus between Dr. FallHowe's role in the case and Mr. Salter's death must be established to a reasonable degree of medical probability through testimony of a qualified expert witness.

Plaintiff's expert must clearly testify as to the probable cause of plaintiff's injury. *Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 269 P.3d 704 (App. 2012). That is to say that "causation must be shown to be *probable* and not merely *possible*, and generally medical expert testimony that a subsequent illness or disease 'could' or 'may' have been the cause of the injury is insufficient." *Id*., citing *Kreisman v. Thomas*, 12 Ariz.App. 215, 218, 469 P.2d 107, 110 (1970). It is, therefore, the plaintiff's burden to satisfy this element of proof through the causation expert's probability testimony. In a negligence action, the plaintiff rather than the defendant, has the burden of proving the elements of this negligence, including causation. *Id*.

In this instance, Plaintiff has failed to establish the necessary element of causation to support this case. Plaintiff alleges that the action or inaction by Dr. FallHowe is a cause of Mr. Salter's death. However, this is unsupported by either the facts or the expert testimony in this matter. Plaintiff cannot provide any facts or testimony in support of causation, instead she relies on mere conclusory statements by her expert witness. As such, Plaintiff has failed to show the necessary element of causation for the medical malpractice claim to survive.

Plaintiff's standard of care expert, Dr. Kern, offered standard of care opinions against many of the professionals that Plaintiff sued and seemingly lumped in Dr. FallHowe while he was at it. The only real opinion expressed by Dr. Kern's only report is "any time Dr. FallHowe was asked for an opinion she should also have been aware of the results and acted to make the urology referral herself or communicate directly with the site provider to have that person make the referral." The evidence in this case, however reveals an entirely different picture. Dr. FallHowe, as Chief Medical Officer for Corizon was not involved with the care of patients, including Mr.

Salter. The first time Dr. FallHowe was made aware of Mr. Salter was in late May 2017. Since she was made aware of Mr. Salter's situation, she was prompt in her responses to e-mails. Further, Dr. FallHowe instructed ASPC-T Santa Rita Providers to appeal the ATP for Mr. Salter so that she could review the case and get Mr. Salter the treatment he needed. Unfortunately, once Mr. Salter started chemotherapy to treat his testicular cancer, he died as a result of complications of the chemotherapy. Given that a germ cell tumor is one of the fastest growing types of cancer, the unfortunate truth is that Mr. Salter was likely well on his way to a poor outcome before Dr. FallHowe was made aware of Mr. Salter's situation.

In his deposition, Dr. Kern confirmed that until a patient is brought to Dr. FallHowe's attention, Dr. FallHowe could not become involved in the process and act in terms of approving or denying requests for specialty care. Dr. Kern also recognized an instance where Dr. FallHowe requested another urologist be found for Mr. Salter because she was not satisfied about the timing of Mr. Salter's then scheduled urology appointment. Lastly, Dr. Kern confirmed during his deposition that there is no evidence that Dr. FallHowe received an appeal request relating to Mr. Salter being seen by an urologist that she denied.

Dr. Kern's testimony is a far cry from the degree of certainty required to establish causation. Dr. Kern's opinion must be to a reasonable degree of medical probability. Dr. Kern's opinion most certainly does not reach the requisite burden of proof as discussed by *Benkendorf*. Further, *Barret* holds that negligence is not actionable in the abstract. As Plaintiff's expert, Dr. Kern is to clearly testify as to the probable cause of Plaintiff's injury in relation to Dr. FallHowe's conduct. *Benkendorf* requires that this causation be "probable and not merely possible."

Despite Plaintiff's expert walking back his already delicate opinion against Dr. FallHowe, Plaintiff has stuck with her claims against Dr. FallHowe. Expert disclosure deadlines have passed and Plaintiff cannot establish that Dr. FallHowe failed to exercise the degree of care of a reasonable prudent health care provider in the same or similar circumstances and most certainly cannot show any such failure was a proximate cause of the injury as required by A.R.S. § 12-563. Put more simply, Plaintiff is incapable of proving the injuries were caused by Dr. FallHowe's conduct. Negligence is not actionable in the abstract and if the allegedly negligent acts are not

causally linked to the damages, in this instance Mr. Salter's death, the Plaintiff's claims against Dr. FallHowe must fail.

   *b. Plaintiff has failed to establish a deliberate indifference claim against Dr. FallHowe*

In addition to the aforementioned state law medical malpractice claim, Plaintiff has asserted a Constitutional based claim of deliberate indifference to serious medical needs by Dr. FallHowe in violation of the decedent's Eighth Amendment rights. Plaintiff's claims against Dr. FallHowe are vague and lumped in with allegations against the other named Defendants. Deliberate indifference to a serious medical need is a cause of action under § 1983 for a violation of the Eighth Amendment. *Estelle v Gamble*, 429 U.S. 97, 105 (1976). The Ninth Circuit further recognizes these claims. See e.g. also *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006); *Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); Clement v. Gomez, 298 F.3d 898 (9th Cir. 2002); *Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc); *Johnson v. Meltzer*, 134 F.3d 1393 (9th Cir. 1998); Kelley v. Borg, 60 F.3d 664 (9th Cir. 1995); *Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1995). The test for § 1983 violation requires a plaintiff to show (1) a serious medical need and (2) that the defendant's response to that serious medical need was deliberately indifferent. *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need is defined as one that "exists if the failure to treat a prisoner's condition could result in further significant injury or unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). Deliberate indifference requires a showing of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. In attacking a defendant's treatment, a plaintiff has to show the course of treatment defendant's chose was "medically unacceptable under the circumstances" and that the choice in treatment was made "in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

In this instance, there is no doubt that Mr. Salter had a serious medical need rather, the problem is that Dr. FallHowe is not even alleged to have actually taken affirmative action or failed to take action that actually harmed the decedent. While the U.S. Supreme Court has found there to be a constitutional violation when a prisoner's medical needs are ignored, the U.S. Supreme

Court in *Estelle* made an important distinction when it held that that "a complaint that a physician has been negligent in diagnosing or treating a medical condition, does not state a valid claim for medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." See *Estelle v Gamble*, 429 U.S. 97, 105 (1976). The Ninth Circuit has agreed finding that single or isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs, and even suggested that gross negligence may be insufficient to establish deliberate indifference. See *Jett,* 439 F.3d at 1096; *McGuckin*, 974 F.2d at 1060; *O'Loughlin v. Doe*, 920 F.2d 614 (9th Cir. 1990); *Prisoners v. Meese*, 871 F.2d 881, 883 n.1 (9th Cir. 1989). In other words, both the Supreme Court and the Ninth Circuit require something more than medical negligence in order to find a violation of the Eighth Amendment resulting from the provision of medical care.

A claim for the violation of a prisoner's Eighth Amendment rights is required to meet a "high legal standard," and is not to be found in all alleged cases of medical negligence. There is no dispute that a case that simply alleges medical negligence is insufficient to amount to deliberate indifference. Plaintiff cannot present specific facts that show there is a genuine issue for trial as to the deliberate indifference claim.

Most of Plaintiff's deliberate indifference allegations relate to Defendants other than Dr. FallHowe. As to Dr. FallHowe specifically, Plaintiff alleges that she was "aware of the outside medical providers recommendation to Aaron to see a Urologist, failed to approve, authorize follow-up, appeal, or otherwise permit Aaron to receive this medically necessary treatment." Plaintiff also alleges that Dr. FallHowe "was advised that Aaron needed to see an outside medical specialist for a Urology consult and proper workup to rule out other conditions and again refused to permit Aaron adequate, reasonable or timely medical care." However, as discussed above, Dr. Kern, Plaintiff's standard of care expert Dr. Kern, testified at his deposition that he had no evidence that Dr. FallHowe received an appeal request relating to Mr. Salter being seen by an urologist that she denied. He further testified that Dr. FallHowe was not satisfied about the timing of Mr. Salter's urology appointment and requested another urologist be found. Finally, Dr. Kern acknowledged that Dr. FallHowe responded promptly to e-mails regarding the care of Mr. Salter.

None of this conduct by Dr. FallHowe shows a purposeful act or failure to respond to a prisoner's pain or possible medical need. Without such evidence, Plaintiff's claim for deliberate indifference against Dr. FallHowe must fail.

### III.   Conclusion

Plaintiff has failed to provide a qualified expert who can testify to a reasonable degree of medical probability that there is a causal connection between Dr. FallHowe's role in the treatment of Mr. Salter and Mr. Salter's death. Additionally, Plaintiff has utterly failed to prove her claim of deliberate indifference as to Dr. FallHowe. As such, Dr. FallHowe respectfully requests that the Court grant summary judgment in her favor.

RESPECTFULLY SUBMITTED this 18th day of December, 2020

WICKER SMITH O'HARA McCOY & FORD, P.A.


By:_____
   Mandi J. Karvis
   Isaiah X. Herrera
   One N. Central Ave., Suite 885
   Phoenix, AZ   85004
   Attorneys for Cynthia Renee FallHowe, M.D.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants.

I hereby certify that on December 18, 2020, I served the attached document by via e-mail on the following:

David A. Chami, Esquire
Chami Law Firm, PLLC
Attorney for Plaintiffs

Nemer N. Hadous, Esquire
Hadous Co. PLLC
Attorney for Plaintiffs

Anthony J. Fernandez, Esquire
Alyssa R. Illsley, Esquire
Dustin Christner, Esquire
Quintairos, Prieto, Wood & Boyer, P.A.
Attorneys for Defendants Corizon Health, Inc., Corizon Health, LLC, Young, Easley, Diaz and Baird

By: /s/ Regina Walter