Mandi J. Karvis/Bar No. 021858
Isaiah X. Herrera/Bar No. 034215
**WICKER SMITH O'HARA McCOY & FORD, P.A.**
One N. Central Ave., Suite 885
Phoenix, AZ  85004

Firm E-mail: PHXcrtpleadings@wickersmith.com

Mandi J. Karvis
  Direct Phone: (602) 648-2240
  Fax: (602) 812-4986
  E-mail: MKarvis@wickersmith.com

Isaiah X. Herrera
  Direct Phone: (602) 648-2243
  Fax: (602) 812-4986
  Email: IHerrera@wickersmith.com

Attorneys for Cynthia Renee FallHowe, M.D.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| De'Vonne Gonzales, on behalf of Aaron Salter's surviving beneficiaries, and as Personal Representative of the Estate of Aaron Salter, deceased,<br><br>      Plaintiff,<br><br>v.<br><br>Corizon Health, Inc., Corizon, LLC, Murray Young, James Baird, Renee Fallhowe, Leo Easley, Ryan Diaz, ASPC-Tucson Site Medical Director, and all Unknown Agents/Employees of Corizon Health, Inc. and/or Corizon, LLC responsible to treat, monitor, and/or refer Aaron Salter for | Case No.:  2:19-cv-02190-PHX-JJT-CDB<br><br>**DEFENDANT CYNTHIA RENEE FALLHOWE'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**<br><br>{ORAL ARGUMENT REQUESTED}<br><br>*(Assigned to Honorable John J. Tuchi)* |

treatment whose authority and/or identity becomes known,
                Defendants.

Pursuant to Federal Rules of Civil Procedure 56, Defendant Cynthia Renee FallHowe, M.D., by and through undersigned counsel, submits this Reply memorandum in further support of Defendant Cynthia Renee FallHowe's Motion for Summary Judgment *(Dkt.182)*. This Reply is based on all pleadings, motions, responses and replies thereto, other documents filed in this case, as well as records filed and other oral and documentary evidence associated with this matter, all of which are herein incorporated by reference. Dr. FallHowe was not involved in the care and treatment of the decedent and Plaintiff cannot establish a causal link between the alleged negligence of Dr. FallHowe and the decedent's death. As such, judgment should be granted in her favor.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff's Response *(Dkt. 198)* does a few remarkable things. First, it concedes key facts in support of Dr. FallHowe's Motion for Summary Judgement. Next, the Response inaccurately states that certain material facts are disputed, but fails to show how they are disputed. Lastly, Plaintiff's Response astonishingly fabricates facts. Plaintiff improperly attempts to lump Dr. FallHowe, Corizon's Chief Medical Officer, in as one of the day-to-day healthcare providers who were actually directly involved in the care and treatment of Mr. Salter. Plaintiff also improperly implies that the comments they cited from the Arizona Medical Board's April 15, 2010 meeting were directly toward Dr. FallHowe, which is simply untrue. The Arizona Medical Board took no action against Dr. FallHowe and found no standard of care violations on her part. Ultimately, Plaintiff's Response fails to show a genuine dispute of material fact and as such, summary judgment should be granted in Dr. FallHowe's favor.

The material facts remain undisputed. The Parties agree that Dr. FallHowe was not directly involved in the care of patients at the Arizona Department of Corrections (hereafter "ADOC"). The Parties also agree that the first time Dr. FallHowe was even made aware of Mr. Salter's

situation was at the end of May 2017, specifically May 26, 2017, which is just shy of 60 days before Mr. Salter's death. Plaintiff claims that Dr. FallHowe was negligent for failing to ensure that Mr. Salter was sent urgently to urology and failed to use her override authority to ensure a more timely referral, but ignores the fact that she was not presented with the opportunity to utilize her override authority and did in fact try to get him seen by a urologist sooner. Plaintiff agrees that Dr. FallHowe was not personally involved in Mr. Salter's care until May 26, 2017. Plaintiff does not dispute that Dr. FallHowe instructed the providers at ASPC-T Santa Rita to appeal the case so that she could review the Alternative Treatment Plan ("ATP") and original treatment plan proposed by the provider and approve one of the plans. Plaintiff also does not dispute that there is no evidence that Dr. FallHowe received an appeal request relating to Mr. Salter being seen by an urologist that she denied. In short, Plaintiff cannot establish that Dr. FallHowe did anything to delay the medical care of the decedent, and rather, she only tried to speed up the process of getting Mr. Salter seen by appropriate specialists.

Plaintiff's Controverting Statement of Facts *(Dkt. 199)* inaccurately states that certain material facts are disputed, but fails to show how they are disputed. The first example of this is Plaintiff's attempt to dispute that Dr. FallHowe promptly responded to communications regarding Mr. Salter. Plaintiff attempts to dispute by referencing an override capability that Dr. FallHowe allegedly failed to use; however, this controverting statement does not directly address that Dr. FallHowe did indeed respond promptly to communications regarding Mr. Salter. Thus, this fact remains undisputed.

More baffling is Plaintiff's attempt to dispute that a germ-cell tumor is one of the fastest growing types of cancer that can rapidly progress from localized to metastatic disease. Plaintiff again tries to dispute this material fact by changing the subject and addressing the survival rates on different stages of testicular cancer. None of Plaintiff's factual material cited disputes that a germ-cell tumor is one of the fastest growing types of cancer, so again, Plaintiff's "dispute" is not supported by factual material. This fact too, remains undisputed despite Plaintiff's conclusory statement to the contrary.

Lastly, Plaintiff once more attempts to improperly dispute that their own expert, Dr. Kern, acknowledged that Dr. FallHowe requested another urologist be found because she was not

satisfied about the timing of Mr. Salter's then scheduled urology appointment. This time, Plaintiff "disputes as incomplete," citing once more an override authority that Dr. FallHowe allegedly failed to use. This again does not specifically address and establish a dispute of the fact that Dr. Kern acknowledged this act by Dr. FallHowe. This attempt to dispute as "incomplete" is yet another conclusory statement unsupported by factual material. Thus, it remains undisputed that Plaintiff's expert, Dr. Kern, acknowledged that Dr. FallHowe requested another urologist be found because she was not satisfied about the timing of Mr. Salter's then scheduled urology appointment.

These attempts by Plaintiff to create a genuine dispute as to Dr. FallHowe's role in this case and the death of Mr. Salter completely fail. Short of picking apart each of the several inaccuracies of Plaintiff's Response, these instances above show that there is no genuine dispute of material fact. Plaintiff attempts to cherry pick only the portions of the facts which they like while ignoring those that do not support their case against Dr. FallHowe.

## II.   LEGAL ARGUMENT

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(c)(4) and 56(e); *Auvil v. CBS "60 Minutes",* 67 F.3d 816, 819 (9th Cir. 1995); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968). But conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary

- 4 -

judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; 11 *11 *Devereaux,* 263 F.3d at 1076.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995). If the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

### A. Plaintiff has not established a causal link between Dr. FallHowe's role as Chief Medical Officer and Mr. Salter's death.

Despite Plaintiff's attempts to distract from the issues, Plaintiff fails to show an act or omission on the part of Dr. FallHowe that lead to causing or contributing to causing Mr. Salter's death. Plaintiff must demonstrate "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred." *Barrett v. Harris*, 207 Ariz. 374, 86 P.3d 954 (Ariz. App. 2004). This intervening cause has to be "an independent cause that occurs between the original act or omission and the final harm and is necessary in bringing about that harm." *Id*. Finally, unless the connection is "readily apparent," the plaintiff must show connection through expert medical testimony. *Id*.

In Plaintiff's Response, Plaintiff half-heartedly argues that the causal connection between Dr. FallHowe's alleged acts or omissions is readily apparent and as such, expert testimony is not required. But this is simply not the case here. If this Court were to consider this connection as readily apparent, the Parties would be relying on the jury to understand the different stages of germ-cell tumors, when Mr. Salter's metastatic cancer progressed to which stage, and whether Dr. FallHowe could have done anything to prevent Mr. Salter's rapidly progressing disease when she was finally made aware of it at the end of May 2017. Those things obviously exceed the knowledge of lay people and as such require expert testimony. The requirement for expert testimony is tailor-made for a case such as this one and Plaintiff has failed to deliver an expert to testify that the required causal nexus exists between any action or inaction of Dr. FallHowe and

Mr. Salter's unfortunate death.

As if acknowledging that expert testimony is in fact required, Plaintiff cited to the testimony of their retained experts, but still failed to establish a causation connection between Dr. FallHowe's alleged negligence and the death of Mr. Salter. What is even more troubling is that Plaintiff's counsel actually blatantly mischaracterizes the testimony of their oncology expert, Dr. Freidlander. In bold Plaintiff's counsel states that "Dr. Friedlander further testified Aaron's cancer was left untreated for so long it spread to his brain and that the spread was recent in August 2017." However, the actual testimony by Dr. Friedlander that was directly quoted below clearly shows that Dr. Friedlander said that the very small brain metastases "happened within the recent month." *(Dkt. 198*, page 7, line 6, through page 8, line 6). Contrary to Plaintiff's assertions, expert testimony is required and the testimony that Plaintiff provided falls far short of establishing a causation connection between Dr. FallHowe's alleged negligence and the death of Mr. Salter. As such, Plaintiff's wrongful death claim against Dr. FallHowe must fail.

### B. *Plaintiff cannot establish deliberate indifference against Dr. FallHowe.*

Plaintiff's claim for deliberate indifference is nothing short of a desperate attempt to lump in one more medical professional to the claim. Despite an unjustifiable attempt to create a material fact that does not exist, the deliberate indifference claim as to Dr. FallHowe remains vague and subject to summary judgment. As cited in Plaintiff's Response, to establish deliberate indifference when there are numerous defendants involved, "(t)he prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988). "(I)solated occurrences of neglect do not amount to a constitutional violation." *O'Loughlin v. Doe, 920* F.2d 614 (9th Cir. 1990).

Here, to justify the claim of deliberate indifference against Dr. FallHowe, Plaintiff outright mischaracterizes a fact in the statement of facts. Plaintiff claims that Dr. FallHowe "interfered" with Mr. Salter's care by instructing NP Easley to write a note denying Mr. Salter's reported pain out of fear of Dr. Robertson's involvement. This is a dangerous misrepresentation to the Court. At first glance, it looks like Dr. FallHowe could have had some ill-intent or something closer to what is required in a U.S.C. § 1983 claim, but Plaintiff does not paint the full picture. Dr.

FallHowe was merely asking NP Easley to write a note reiterating what NP Easley told Dr. FallHowe. With Plaintiff's misrepresentation in mind, it is important to directly quote NP Easley:

> This patient pain is not a 9/10 he states its (sic) a 9 but his behavior is not consistent with his score.  He is very calm and relaxed/jovial… He is doing well at this time and will continue to monitor his pain and his behavior.

*(Dkt. 199-2*, at p.36).  In response to this, Dr. FallHowe stated:

> Would you add a note that indicates that his complaints are not consistent with his behavior and your observations.  Dr. Robertson is all over this… This is a case that we need to send to another urologist to have completed within 60 days.

*(Dkt. No. 199-2*, at p. 38).  Full transparency of this interaction shows that Dr. FallHowe was merely asking NP Easley to write a note reflecting NP Easley's observation that Mr. Salter's subjective pain level of 9/10 was not consistent with his behavior during the subject visit.  This is not anything close to the wicked act that Plaintiff tries to characterize in Plaintiff's Response.  In fact, there is nothing unusual, let alone nefarious, about Dr. FallHowe's instruction to NP Easley or his observations about Mr. Salter during the visit.  Health care providers are trained to use their own judgment and objective evidence to determine the validity of patient's subjective complaints.

Plaintiff's attempt to twist the facts aside, Dr. FallHowe is not even alleged to have actually taken affirmative action or failed to take action that actually harmed the decedent.  The undisputed material facts are that Dr. FallHowe was first made aware of Mr. Salter's situation at the end of May 2017, and from that point on, she never denied an appeal request relating to Mr. Salter's care and always promptly responded to inquiries from Dr. Robertson about Mr. Salter's situation and did whatever was asked of her to help facilitate getting him an earlier appointment for specialty care.  Sadly, by the time Dr. FallHowe was asked to intervene, the dye was already cast and there was nothing that she could have done to change the ultimate outcome.  Plaintiff's own expert acknowledged that Dr. FallHowe was not satisfied about the timing of Mr. Salter's urology appointment and requested another urologist be found.  Plaintiff's expert also recognized that Dr. FallHowe was prompt in responding to e-mails regarding Mr. Salter.  None of these undisputed material facts rise to conduct by Dr. FallHowe that shows a purposeful act or failure to respond to Mr. Salter's pain or possible medical need.  Thus, Plaintiff's deliberate indifference claim against her must fail.

## III. CONCLUSION

For Plaintiff's Response to conclude with a bible verse is the very definition of irony when his pleading is filled with intentional mischaracterizations and misrepresentations of the evidence in an improper attempt to defeat Dr. FallHowe's Motion for Summary Judgment. For the foregoing reasons, Defendant Cynthia Renee FallHowe, M.D. respectfully asks this Court to grant summary judgment in favor of her on all claims. Plaintiff has failed to establish a genuine dispute of material fact in the claims against Dr. FallHowe. Despite mischaracterizing facts, the material facts remain undisputed and Plaintiff has failed to show that there is a causal connection between Dr. FallHowe's role in this case and Mr. Salter's death. Similarly, Plaintiff has failed to show deliberate indifference as to Dr. FallHowe. As such, Dr. FallHowe respectfully requests that this Court grant summary judgment in her favor.

RESPECTFULLY SUBMITTED this 26th day of February, 2021

WICKER SMITH O'HARA McCOY & FORD, P.A.

By: */s/Mandi J. Karvis*
Mandi J. Karvis
Isaiah X. Herrera
One N. Central Avenue, Suite 885
Phoenix, AZ  85004
*Attorneys for Cynthia Renee FallHowe, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants.

- 9 -

    I hereby certify that on February 26, 2021, I served the attached document via e-mail on the following:

David A. Chami, Esquire
**CHAMI LAW FIRM, PLLC**
E-mail: david@pricelawgroup.com
*Attorney for Plaintiffs*

Nemer N. Hadous, Esquire
**HADOUS | CO. PLLC**
E-mail: nhadous@hadousco.com
*Attorney for Plaintiffs*

Anthony J. Fernandez, Esquire
Alyssa R. Illsley, Esquire
Dustin Christner, Esquire
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
E-mail: aferandez@qpwblaw.com
E-mail: dustin.christner@qpwblaw.com
E-mail: alyssa@illsley@qpwblaw.com
*Attorneys for Defendants Corizon Health, Inc., Corizon Health, LLC, Young, Easley, Diaz and Baird*

/s/Vicki L. Cobbs